**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

v.                                                            CRIMINAL ACTION NO. 2:20-cr-00133

RONALD EDWARD TINSLEY

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Defendant Ronald Tinsley's Motion for Compassionate Release, [ECF No. 84]. The Government did not respond, and the matter is ripe for review. For the following reasons, the motion is **DENIED**.

**I.      BACKGROUND**

On October 18, 2021, Defendant pled guilty to possession of a stolen firearm. [ECF No. 63]. On February 17, 2022, this court sentenced Defendant to 84 months imprisonment to be followed by three years of supervised release. [ECF Nos. 70, 71]. Defendant previously requested compassionate release in November of 2025 based on a medical condition for which he attached medical records. [ECF No. 78]. This court, however, denied the request because Defendant failed to first exhaust his administrative remedies. [ECF No. 80].

On November 10, 2025, Defendant's former counsel contacted the appropriate personnel with the Residential Reentry Management Office in Pittsburgh ("RRM Pittsburgh"), who acknowledged receipt of the email containing a copy of Defendant's *pro se* request for compassionate release. [ECF No. 84-1]. According to Defendant's renewed motion, Defendant did

not receive a substantive response from RRM Pittsburgh to his letter within thirty days. [ECF No. 84, at 1].

Defendant is 53 years old, and he suffers from a heart condition, high blood pressure, and high cholesterol. [ECF No. 78, Ex. C].[1] Since May 6, 2025, Defendant has had multiple hospital visits due to cardiac symptoms that ultimately required surgery to implant a pacemaker. *Id.* Specifically, Defendant had to be transported out of detention for a hospital stay in which he was diagnosed with bradycardia (slow heartbeat). *Id.* Upon hospital discharge, Defendant had to wear a Holter monitor to record his heart rhythm for 30 days. *Id.* Defendant states this required him to stay within the medical unit of his detention facility. [ECF No. 84, at 3].

In June of 2025, Defendant was taken to Charleston Area Medical Center ("CAMC") again to see an electrophysiologist to analyze the output of Defendant's Holter monitor. [ECF No. 78, Ex. C]. The doctor concluded that Defendant was symptomatic for sinus bradycardia and that his results were abnormal, with an average heart rate of 56 and a 3.3-second sinus pause (the time between heartbeats). *Id.* The doctor also found that the results may be consistent with sinus node dysfunction. *Id.* Defendant returned to see the electrophysiologist on August 14, 2025, reporting "persistent dizziness . . . , poor sleep quality and daytime drowsiness." *Id.* The final recommendation was for Defendant to have a pacemaker implanted, and the doctor also recommended that Defendant have an Obstructive Sleep Apnea test once he is no longer incarcerated. *Id.*

---

[1] Notably, Defendant's medical records were not attached to his renewed Motion for Compassionate Release. [ECF No. 84]. However, taking account of Defendant's *pro se* status, the court takes notice of the records as they were properly included in his earlier motion in November 2025. [ECF No. 78].

On September 25, 2025, Defendant underwent surgery for a dual-chamber pacemaker. *Id.* The surgical notes included the findings of the electrophysiologist and Holter monitor records. *Id.* Since surgery, Defendant's pacemaker activity has been monitored with a transmitter, which CAMC provided to Defendant's facility. [ECF No. 84, at 4]. Defendant has also attended routine surgical follow-ups at CAMC, and he has another appointment scheduled for July 21, 2026. [ECF No. 78, Ex. C].

## II.     LEGAL STANDARD

Generally, courts may not modify a term of imprisonment once it has been imposed. 18 U.S.C. § 3582(c); *Dillon v. United States*, 560 U.S. 817, 819 (2010). However, the First Step Act allows district courts to determine whether "extraordinary and compelling reasons" exist to reduce a criminal defendant's sentence. *United States v. Davis*, 99 F.4th 647, 653 (4th Cir. 2024). A defendant may now, after exhausting his administrative remedies, file a motion on his own behalf for a sentence reduction. 18 U.S.C. § 3582(c)(1)(A). A district court must then determine (1) whether extraordinary and compelling reasons warrant a reduction; (2) whether a reduction is consistent with the sentencing commission's policy statements; and (3) whether the 18 U.S.C. § 3553(a) factors favor release. *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023).

## III.    DISCUSSION

I **FIND** that while Defendant has exhausted his administrative remedies, he has failed to demonstrate how his condition presents an extraordinary and compelling reason for release. Because Defendant has not shown an extraordinary and compelling circumstance, I need not further consider the § 3553(a) factors. *United States v. Smith*, No. 24-6726, 2025 WL 1864767, at *2 (4th Cir. July 7, 2025). Accordingly, Defendant's motion is **DENIED**.

### A.   Administrative Exhaustion

To satisfy the exhaustion requirement, "incarcerated persons must first ask the BOP to file a motion for compassionate release on their behalf, and then, either (1) appeal the BOP's failure to bring a motion on their behalf, or (2) allow 30 days to lapse after making the request, whichever comes first." *United States v. Kibble*, 992 F.3d 326, 330 n.2 (4th Cir. 2021) (citing 18 U.S.C. § 3582(c)(1)(A)).

On November 10, 2025, Defendant's former counsel emailed RRM Pittsburgh with a copy of Defendant's *pro se* request for compassionate release. [ECF No. 84-1]. According to the Bureau of Prisons' records, Defendant was housed at this facility at the time. Personnel with RRM Pittsburgh acknowledged receipt of the email and stated that Defendant's documentation would be reviewed. *Id.* However, Defendant did not receive a response within thirty days. [ECF No. 84, at 1]. Accordingly, I find that Defendant has exhausted his administrative remedies such that I may consider his motion.

### B.   Extraordinary and Compelling Reasons

For the court to consider granting a motion for compassionate release, a defendant must first demonstrate an extraordinary and compelling reason. Absent congressional limitations, district courts are permitted to "think expansively" about what may constitute an extraordinary and compelling reason. *Davis*, 99 F.4th at 657–68. The United States Sentencing Commission has promulgated advisory guidelines to aid courts in this determination. *See* U.S.S.G. § 1B1.13(b); *see also United States v. Shields*, 779 F. Supp. 3d 774 (S.D. W. Va. Apr. 24, 2025). While the guidelines are not binding, I nevertheless carefully consider them in reaching my judgment.

4

Amendments to these guidelines took effect on November 1, 2025, and any of the following circumstances, or combination thereof, constitute an extraordinary and compelling reason: (1) the defendant's medical circumstances, (2) the age of the defendant, (3) the defendant's family circumstances, (4) the defendant is victim of abuse, (5) other reasons that are similar in gravity to those previously listed, or (6) imposition of an unusually long sentence. *Id.* § 1B1.13(b)(1)–(6); *see United States v. Crawley*, 140 F.4th 165, 170 (4th Cir. 2025) (explaining that § 3582(c) "suggests that the courts should consider policy statements that are applicable at the time the court renders its decision—irrespective of when the motion itself was filed.").

Defendant's argument is based on his medical circumstances, including his "heart condition, recent surgery to implant a pacemaker, and, especially, his scheduled follow-up appointments . . . ." [ECF No. 84, at 6]. According to the guidance of U.S.S.G. § 1B1.13(b)(1), consideration of defendant's medical circumstances may include whether:

(A)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory) . . . . Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(B)   The defendant is—
(i) suffering from a serious physical or medical condition,
(ii) suffering from a serious functional or cognitive impairment, or
(iii) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C)   The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

*Id.* § 1B1.13(b)(1)(A)–(C) (omitting (D) as inapplicable).

Considering the nature of the examples set forth in § 1B1.13(b)(1)(A), section (A) is not applicable in this case. Defendant has a heart condition that requires a pacemaker, but it is not the type of disease contemplated by the guidelines. Section (B)(i) is closer to Defendant's circumstance in that his heart condition is a serious physical and medical condition from which he is not expected to recover. However, there is no evidence that Defendant's heart condition "*substantially diminishes*" his ability "to provide self-care within the environment of a correctional facility." *Id.* § 1B1.13(b)(1)(B) (emphasis added).

While Defendant had to be transported to the hospital several times in 2025, this was for assessments that led to the implantation of his pacemaker—a device to make his condition manageable. Since then, he has merely had follow-up appointments, which do not create extraordinary and compelling circumstances, nor do they substantially diminish Defendant's ability to care for himself in confinement. The most recent medical record the court has is from September 25, 2025, and at that time, Defendant reported persistent dizziness and drowsiness. These symptoms are not enough to constitute an extraordinary and compelling reason for release. I do note that Defendant's doctor has recommended an Obstructive Sleep Apnea test once Defendant is no longer incarcerated, but Defendant did not treat that recommendation with any urgency in his motion—in fact, he did not mention it in his argument. Moreover, it seems that the recommending doctor did not view the testing as urgent because he found it permissible to conduct it in the future. On the record, I cannot conclude that these circumstances amount to a situation in which Defendant's ability to care for himself is substantially diminished by being incarcerated.

For similar reasons, I find that Defendant's condition is not extraordinary or compelling under the non-binding guidance of § 1B1.13(b)(1)(C). Defendant's heart condition does require

6

long-term and specialized cardiac care because Defendant must regularly follow up with a cardiologist. Yet, section (C) exists for scenarios where a defendant cannot access care, putting the defendant "at risk of serious deterioration in health or death." *Id.* § 1B1.13(b)(1)(C). The record reflects that Defendant *can* access care. He was transported to the hospital when he experienced issues prior to his pacemaker being implanted. He met with specialists before the procedure. He underwent the procedure. There is no assertion that prison transport or care was or is inadequate. There is also no evidence suggesting that Defendant has encountered barriers in attending his follow-up appointments. Accordingly, I do not find an extraordinary or compelling reason for release under this section.

I recognize that § 3582(c) provides that a combination of circumstances can amount to an extraordinary and compelling reason. Similarly, the assessment should take "full consideration of the defendant['s] individual circumstances." *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020). Yet, there is no combination of facts or circumstances that provides an extraordinary and compelling reason for releasing Defendant pursuant to the commission's advisory guidelines. And in my independent assessment of the facts apart from the guidelines, I conclude the same.

Defendant is 53 years old and is not of such advanced age that his situation is further complicated by the aging process.[2] Defendant did not receive an unusually long sentence because he was sentenced at the lowest point of his guideline range, which is still the lowest sentence associated with his criminal history under the most recent guidelines. Overall, the record reflects that Defendant has a heart condition, which undoubtedly comes with certain hardships. But

---

[2] Courts can consider the age of the defendant, if the defendant is (1) "is at least 65 years old," (2) "is experiencing a serious deterioration in physical or mental health because of the aging process," and (3) "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." § 1B1.13(b)(2).

7

Defendant's medical records and motion demonstrate that he is accessing and receiving care despite being incarcerated. Defendant's ability to care for himself in confinement has not been substantially diminished, and his pacemaker was implanted to treat the very heart condition that resulted in emergency circumstances in May 2025. Accordingly, I find that there is not an extraordinary and compelling reason, based on any combination of factors, that warrants Defendant's release.

## IV.    CONCLUSION

Finding that there is not an extraordinary and compelling reason for Defendant's release, I need not consider the § 3553(a) factors. Defendant's Motion for Compassionate Release, **[ECF No. 84]**, is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER:      April 2, 2026

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

8